IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN A. HALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:03cv398-SRW |
| | ) | WO |
| JOHN E. POTTER, | ) | |
| Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Plaintiff John A. Haley brought this lawsuit against the Postal Service for discrimination based on race, sex, and age and retaliation in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, in connection with defendant's failure to promote him to the position of Labor Relations Specialist in February, 2000.  The court conducted a bench trial in this case in September, 2004.  For the reasons set out below, the court concludes that judgment should be entered in favor of defendant.

### Findings of Fact

In 1999, plaintiff John Haley was a level EAS-16 Supervisor of Distribution Operations at the United States Postal Service (USPS) Processing and Distribution Center in Montgomery, Alabama. On November 17, 1999, the Postal Service posted a vacancy announcement for the position of Labor Relations Specialist.  The posting directed interested applicants to submit a Postal Service Form 991 application for promotion and a separate

statement of qualifications that specifically addressed each of the knowledge, skills and abilities (KSAs) listed in the announcement.  Eleven applicants submitted packages for screening by a review screening panel.

On January 20, 2000, a three-person review committee screened the applicants and narrowed the field to four candidates: the plaintiff, Valerie Judah, Miranda Faye Jackson, and Kathleen Watts.  These names were forwarded to Peter Marcoux, the selecting official, for his consideration.  The candidates were interviewed by Marcoux and his staff, and then sent to a bank of computers to respond to written questions. On February 7, 2000, Marcoux advised plaintiff by letter that he was not selected for the position, and advised Valerie Judah that she had been chosen for the job.

Judah, a white female who was 36 years old at the time of her selection for the position at issue, began her career with the Postal Service in January 1985 as a Distribution/Window clerk, and was promoted to a management position in 1991.  She held an employment grade of EAS-13 on the Executive and Administrative Schedule.  Judah earned a law degree in 1998 while working for the Postal Service.  Plaintiff, an African-American male who was 51 years old at the time of his non-selection, began working for the Postal Service in 1974 as a Letter Sorting Machine Operator.  He held an employment grade of EAS-16 on the Executive and Administrative Schedule.  Plaintiff was promoted to a management position in 1983. He earned a masters degree in human resource management in 1993.  In addition, at his own request, plaintiff was detailed (temporarily assigned) as a Labor Relations Specialist in Montgomery from November 1994 to February 1995.

2

Prior to plaintiff's non-selection for the position at issue in this case, he had previously applied on a number of occasions for a promotion to Labor Relations Specialist and had filed  EEO complaints of discrimination after he was not selected. His most recent EEO complaint was filed on April 26, 1999, some eleventh months prior to plaintiff's non-selection in this case.  Peter Marcoux, the manager of labor relations, was the selecting official – and, thus, the object of plaintiff's complaints – in plaintiff's previous non-selections.  Plaintiff alleges that, in 1994 or 1995, during his detail as a Labor Relations Specialist, Marcoux, who was then his supervisor, told plaintiff that if it were left up to him, plaintiff would not be in labor relations or that if he had known that plaintiff had filed an EEO complaint he would not be in labor relations.

## Conclusions of Law

1.    <u>Race, Sex and Age Discrimination</u>

Under both Title VII and the ADEA, a plaintiff may prove a claim of discrimination through (1) direct evidence, (2) circumstantial evidence, or (3) statistical proof.  <u>See</u> <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081 (11th Cir.1990); <u>see also</u> <u>Apodaca v. Secretary of Dept. of Homeland Sec.</u>,161 Fed.Appx. 897, 899 (11th Cir. 2006) (unpublished). Plaintiff has not offered any direct evidence of race, sex or age discrimination in this case.  In evaluating disparate treatment claims supported by circumstantial evidence, the court uses the framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). To prove discriminatory treatment violating Title VII, a plaintiff must first establish

a *prima facie* case of discrimination. Eskra v. Provident Life & Acc. Ins. Co., 125 F.3d 1406, 1411 (11th Cir. 1998).[1] To establish a *prima facie* case of discrimination for failure to promote based on circumstantial evidence, a plaintiff must prove: (1) that he was a member of a protected class; (2) that he was qualified for and applied for the position; (3) that he was rejected; and (4) that others who were not members of the protected class were hired. E.E.O.C. v. Joe's Stone Crabs, 296 F.3d 1265, 1273 (11th Cir.2002).[2]

A plaintiff who establishes a *prima facie* case raises a rebuttable presumption that the employer illegally discriminated against him. The employer then has the burden of articulating legitimate, nondiscriminatory reasons for the adverse employment action. McDonnell Douglas, 411 U.S. 792, 802-03. If the employer fails to produce such evidence, the plaintiff is entitled to judgment. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993). On the other hand, if the employer articulates a legitimate reason for its action, the presumption of discrimination disappears. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir.1997). The plaintiff must produce sufficient evidence to permit the fact-finder to conclude that the employer's stated reason was not the real reason for the employment decision. St. Mary's, 509 U.S. at 511.  If the proffered reason is one that might motivate a

---

[1] The same analysis applies to ADEA cases. Id.; see also Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267-1268 (11th Cir. 2001).

[2] To evaluate circumstantial evidence in age discrimination cases, the court uses a modified form of the McDonnell Douglas test. Under that modified form, a employee establishes a *prima facie* case of age discrimination based on circumstantial evidence by demonstrating that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir.2000) (en banc).

reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004). Quarreling with that reason is not sufficient. Id. A plaintiff cannot prove pretext simply by showing that he was better qualified than the individual who received the position he wanted. Denney v. City of Albany, 247 F.3d 1172, 1187 (11th Cir.2001).

Despite the shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Wilson, 376 F.3d at 1088. A plaintiff may prevail on an employment discrimination claim either by proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination. Id. Once the trial has proceeded to the second step of the McDonnell Douglas burden-shifting framework, the first step, which is the *prima facie* issue, should be left behind. From that point, the inquiry should focus on the ultimate question of whether the defendant intentionally discriminated against the plaintiff – that is, whether, more probably than not, the employer took an adverse employment action against plaintiff on the basis of a protected personal characteristic. Collado v. United Parcel Service, Co., 419 F.3d 1143, 1153 (11th Cir. 2005).

In this case, the Postal Service does not dispute that plaintiff has established a *prima facie* case of age, sex and age discrimination, nor does it argue that plaintiff did not meet the

5

basic qualifications for the Labor Relations Specialist position.  However, the Postal Service maintains that it had a legitimate, non-discriminatory basis for selecting Judah over Haley – that is, the fact that Judah had a law degree, and that the person selected for the Labor Relations Specialist position would be required to represent the Postal Service in litigated hearings before the Equal Employment Opportunity Commission and the United States Merit Systems Protection Board, as well as in arbitration hearings held pursuant to the collective bargaining agreement.

On the other hand, plaintiff contends that he was more qualified by education, training, experience and tenure than was Judah for the position of Labor Relations Specialist. He argues that Marcoux improperly failed to use any objective criteria in selecting Judah over plaintiff.  He points out that, in response to the question, "What criteria did you use to select the successful applicant," Marcoux responded on his EEO affidavit, "who would be best suited for the position."  Plaintiff further maintains that Marcoux used no postal regulations or policy or formal scoring system in making his decision, and maintained no notes of his interviews.

After careful consideration of the testimony at trial, the court finds that when Marcoux made the selection at issue, he believed in good faith that Judah's legal training gave her a significant advantage over the other candidates. As plaintiff himself admitted, Labor Relations Specialists at the time of the selection[3] were responsible for advising managers on

---

[3] By the time of trial, these responsibilities had been shifted to the Postal Service's law department.

aspects of the collective bargaining agreement, drafting discipline for supervisors, and representing the agency in EEO hearings.  The latter activity included calling witnesses, conducting direct and cross-examination, making opening and closing arguments, and, at least in some instances, drafting and serving discovery on other parties.  As Marcoux explained, he believed that a lawyer would be trained in how to advocate, how to cross-examine, and how to propound discovery.  He thought that Judah "would be a great help to my shop in that she could give not only my direct staff some guidance in legal matters with the E.E.O.C., but myself as well since I had my paralegal degree."

The question before the court is not whether or not Marcoux was correct in his view that Judah's law degree would be valuable in this position, but whether or not he honestly believed that Judah was the superior candidate for this reason.  See Cooper v. Southern Co., 390 F.3d 695, 729 (11th Cir. 2004)("[T]he crucial question here is not whether Cooper fulfilled the requirements, but whether Howard honestly believed that Cooper did not meet the criteria."); see also Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267-68 (11th Cir. 2001) ("The relevant inquiry for us, then, is not to judge which employee was more qualified, but to determine whether any disparity between Bowen's and Cofield's managerial qualifications is so great that a reasonable fact-finder could infer that Goldkist did not believe Bowen to be better qualified."); Denney, 247 F.3d at 1188 (11th Cir.2001)("We do not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive.")(citation omitted); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991)("Federal courts do not sit as a super-personnel department that

7

reexamines an entity's business decisions ... . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.") (citation and internal quotation marks omitted); Mitchell v. USBI Co., 186 F.3d 1352, 1354 (11th Cir.1999) ("This Court repeatedly has stated that it will not second-guess a company's legitimate assessment of whether an employee is qualified for a particular position."). In this case, the court is satisfied that Marcoux gave an honest explanation of his reason for choosing Judah based on his legitimate assessment of which candidate was the best qualified for the position.

To the extent that Marcoux made his choice based on his subjective belief about the candidates' qualifications, rather than on tests or other objective criteria, he was entitled to do so, so long as that subjective belief did not reflect an impermissible motive. It is the employer's role, not the role of the court, to "'identify those strengths that constitute the best qualified applicant.'" Kincaid v. City of Omaha, 378 F.3d 799, 805 (8th Cir.2004) (citation omitted). Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII or other federal employment discrimination statutes. Denney, 247 F.3d at 1185. A subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the McDonnell Douglas /Burdine analysis – indeed, subjective evaluations of a job candidate are often critical to the decision-making process, especially in employment decisions concerning supervisory or professional positions. Id. at 1186. As the Court of Appeals has indicated, "[i]t is inconceivable that Congress intended anti-discrimination statutes to deprive an employer

of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation. ... To phrase it differently, subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions. Subjective reasons can be just as valid as objective reasons.... A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Id. (citation omitted).  Defendant has done so in this case.

Finally, plaintiff's assertion that he was in fact more qualified to be promoted to Labor Relations Specialist than Judah was is unavailing. As the Eleventh Circuit has noted, "[o]ur precedent ... requires a strong showing of a disparity in qualifications in order for an inference of discrimination to arise." Id. at 1187.  Until recently, the Court explained the standard as follows: "In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted.... [D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." Id. (citation and internal quotation marks omitted).  However, in Ash v. Tyson Foods, Inc., __U.S. __, 126 S.Ct. 1195 (2006), the Supreme Court determined that "[t]he visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications." Id. at 1197.

Without defining more precisely what standard should govern pretext claims based

9

on superior qualifications, the Supreme Court cited various other standards with approval, including one employed by the Eleventh Circuit: that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Id. (citation omitted). At least one lower court in this circuit has employed this standard in evaluating a qualifications challenge after Ash. Williams v. Fresenius Medical Care North America, Inc., 2006 WL 640515, *1-2 (S.D.Ala.2006). This court will do likewise, and it readily concludes that – in light of Judah's law degree, and her considerable (if not perfectly comparable) tenure and experience in the Postal Service – this is not a case in which no reasonable person, in the exercise of impartial judgment, could have chosen Judah over the plaintiff for the job in question.

Accordingly, for the foregoing reasons, plaintiff has failed to carry his burden of proving that defendant intentionally discriminated against the plaintiff – that is, that more probably than not, the employer took an adverse employment action against plaintiff on the basis of a protected personal characteristic.

2.    Retaliation

The Postal Service agrees with plaintiff that he has shown that he participated in prior EEO activity and suffered an adverse personnel action, but it contends that plaintiff failed to show that there was a nexus between the two and, thus, that he cannot carry his burden to prove retaliation. Specifically, defendant denies that Marcoux told plaintiff that if it were left up to him, plaintiff would not be in labor relations or that if he had known that plaintiff had

filed an EEO complaint he would not be in labor relations, and contends further that – even if Marcoux did make such a statement – it was too remote in time to satisfy the nexus requirement of the prima facie case.  Plaintiff maintains, however, that because plaintiff did not work under Marcoux at the time that he applied for the promotion, this selection was the first opportunity Marcoux had to retaliate against him for his prior EEO complaints against Marcoux.

Title VII prohibits retaliation in the employment arena:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  In this case, plaintiff seeks to prove retaliation using both direct and circumstantial evidence.  "Direct evidence is evidence which itself proves the existence of discrimination and does not require inference or interpretation, as for example a frank admission from a manager that he refused to hire an applicant because he was black or because she was female." Cooper v. Southern Co., 390 F.3d 695, 724 n. 15 (11th Cir.2004). Direct evidence is "encountered only infrequently, since [it] is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." Id. (citation and quotations omitted).

Marcoux' alleged comment – which plaintiff recalled either as "if it were left up to him, plaintiff would not be in labor relations," or "if he had known that plaintiff had filed an EEO complaint he would not be in labor relations" – does not constitute direct evidence of

discrimination.  The comment is vague, at best, and plaintiff does not recall its content

clearly.[4]  Further, the comment, if made, does not prove the existence of discrimination

without inference or interpretation.  Marcoux' alleged statement appears to refer to his

decision in 1994 to allow plaintiff to be detailed as a labor relations specialist in late 1994

and early 1995, not to his decision not to select plaintiff for a permanent position some five

years later, in February, 2000.  Thus, the comment is subject to an interpretation that renders

it unrelated to the decision at issue in this case, and it is also remote in time from that

decision.  See Roberts v. Design & Mfg. Services, Inc., 2006 WL 20538, *2 (11th Cir. 2006)

(unpublished) (Statements which were primarily made months before termination  require

inferential leaps that defendant terminated plaintiff due to his age, which, under the law of

this Circuit, is not direct evidence of employment discrimination.); Johnson v. Nicholson,

2005 WL 3199278, *3 (11th Cir. 2005) (unpublished) (Comment was made months before

the panel interviews and hiring decisions for the new positions and did not relate to the

decision not to select plaintiff for one of those positions.")(citing Scott v. Suncoast Beverage

Sales, Ltd., 295 F.3d 1223, 1227-28 (11th Cir.2002)); Riley v. Birmingham Bd. of Educ.,154

Fed.Appx. 114, *116 (11th Cir. 2005) (unpublished) (Remarks by non-decisionmakers or

remarks unrelated to the decisionmaking process itself are not direct evidence of

---

[4]  At another point in his testimony at trial, plaintiff described the comment as "If it was up
to me I would not put you in labor relations or if I had known you filed an EEO complaint I would
not have put you in labor relations."  Plaintiff said that "I think I remember him saying EEO
complaint," but was not sure.  In a 2001 affidavit, plaintiff reported the comment as, "If it was up
to me, you would not be detailed to this labor position because you file EEO complaints."
Defendant's Exhibit 1.

discrimination.); <u>Jones v. BE&K Engineering Co.</u>, 146 Fed.Appx. 356, 358 (11th Cir. 2005) (unpublished) (In order to constitute direct evidence, the evidence must directly relate in time and subject to the adverse employment action at issue.); <u>Ross v. Rhodes Furniture, Inc.</u>, 146 F.3d 1286, 1291(11th Cir. 1998) (Comments are not direct evidence of discrimination when they are too remote in time.); <u>Merritt v. Dillard Paper Co.</u>, 120 F.3d 1181, 1189 (11th Cir.1997) (Evidence that only suggests discrimination, or that is subject to more than one interpretation, does not constitute direct evidence.).

Thus, absent direct evidence of discrimination, the court must analyze this case under the <u>McDonnell Douglas</u> circumstantial evidence test. "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1266 (11th Cir. 2001). "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." <u>Id</u>. (citations and internal quotation marks omitted). "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." <u>Id</u>. "The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff. <u>Id</u>.

In this case, although the court has considerable doubt about whether plaintiff has satisfied the elements of a *prima facie* case – particularly the element that there is some

causal relation between plaintiff's EEO complaints and his non-selection – it assumes *arguendo* that plaintiff has established a *prima facie* case, because it finds the Postal Services' legitimate reason for its decision are dispositive.  See id.  As noted *infra*, plaintiff has not met his burden of establishing that the defendant' reason is pretextual. The court is persuaded that a reasonable employer might be motivated by – and, in this case, was in fact motivated by – its perception that Judah's legal training gave her a significant advantage over the other candidates in selecting her over plaintiff to fill the Labor Relations Specialist position.  Plaintiff has not met his burden to show that defendant had a retaliatory intent in making this selection.

    For the foregoing reasons, the court concludes that judgment is due to be entered in favor of defendant and against plaintiff.  A separate judgment will be entered.

    DONE, this 31st day of March, 2006.


                                    /s/ Susan Russ Walker                           
                                    SUSAN RUSS WALKER
                                    UNITED STATES MAGISTRATE JUDGE